# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SIDNEY SHIRLEY on behalf of himself and other similarly situated laborers, | |
| Plaintiff, | No. 16 C 6279 |
| v. | Judge James B. Zagel |
| STAFFING NETWORK HOLDINGS, LLC, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In this proposed class action, Plaintiff Sidney Shirley alleges that Defendant Staffing Network Holdings, LLC, an employment agency, discriminated against African American job applicants in favor of Latino applicants. Staffing Network moves to dismiss all claims against it and also moves to strike and dismiss Shirley's class action allegations. For the reasons below, both of Staffing Network's motions are denied.

## BACKGROUND

The following facts are taken from the Plaintiff's complaint and are accepted as true for purposes of resolving these motions. Plaintiff Sidney Shirley is an African American. At various times from June 2012 to June 2014, Shirley visited the branch office of Defendant Staffing Network in Hanover Park, Illinois. Staffing Network operates as an employment agency, providing third-party client companies with low and moderately skilled laborers to fill jobs on a daily basis. The company permits individuals who are seeking employment to walk into one of its branch offices to request a referral to an employer. When an applicant walks into a Staffing Network branch office, the applicant provides his contact information to a Staffing Network

1

employee.

When Shirley sought work at the Hanover Branch, he signed in on a form that would indicate the order in which applicants had arrived. Shirley would wait at the office in an attempt to receive work.

Shirley observed that during the two years he was seeking work through Staffing Network, about a quarter of the applicants seeking work were African American. While at the Hanover Park branch office, Shirley observed that job applicants who appeared Hispanic and spoke Spanish were assigned to jobs, while the applicants who appeared African American were not assigned jobs. Shirley states that on many occasions he would seek work at the office and was not assigned work, despite being qualified for work. Shirley alleges that the non-African Americans who received job assignments were no more qualified than Shirley and had not arrived at the office before Shirley. Furthermore, Shirley alleges that when he was not present at the office, he did not receive assignments even though non-African American laborers were contacted about work assignments.

At one point between June 2012 and June 2014, Shirley and other African Americans were assigned by Staffing Network to work at a company called Philips-Norelco. When this job ended, Shirley alleges he was passed up on further assignments for Hispanic employees.

## LEGAL STANDARD

A plaintiff will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint "(1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 601–02 (7th Cir. 2016).

In making its determination, the Court will "accept all well-pleaded factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor." *White v. Keely*, 814 F.3d 883, 887–88 (7th Cir. 2016). A complaint "need not contain detailed factual allegations, but it must provide more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

Employment discrimination claims "are not subject to a heightened pleading standard." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Because employers are familiar with discrimination claims and know how to investigate them, "little information is required to put the employer on notice of these claims." *Id.*

## DISCUSSION

Shirley alleges that Staffing Network discriminated against him and other African American job applicants at the Hanover Park branch in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. § 2000e, *et seq*.

I.  **Statute of Limitations**

Staffing Network argues that Shirley's claims are time-barred. Generally complaints do not need to anticipate affirmative defenses to survive a motion to dismiss but "when the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitation," the court may find the action is barred. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

To timely file a Title VII claim, a plaintiff must file his charge of discrimination with the EEOC "within 300 days of the date of the occurrence of the alleged occurrence of the

3

discriminatory conduct or event." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir. 1999). Shirley filed his EEOC charge on March 12, 2015. In this charge, he asserts two things about the dates of the discriminatory conduct. First, in a box titled "DATE(S) DISCRIMINATION TOOK PLACE," Shirley wrote: "2011-Present." But on the attached rider to the EEOC charge, Shirley wrote that he sought work assignments through Staffing Network from 2011 "up through approximately June of 2013." If June 2013 controls as Shirley's alleged final date of discrimination, then he would have missed the 300 day window required for his Title VII claim.

Courts grant a plaintiff significant leeway when interpreting an EEOC charge, in part because "most EEOC charges are completed by laypersons rather than by lawyers." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). When interpreting the allegations in Shirley's EEOC charge in the light most favorable to the plaintiff, as is required at this stage of the litigation, the filing alleges discrimination continuing up until the day the charge was filed. Shirley alleges elsewhere that discrimination occurred *up through* June 2013, but never alleges that June 2013 was the final date of discrimination. Thus his allegations that discrimination occurred up until the "present" are consistent with the facts set out in the attached rider. The EEOC therefore alleges conduct within the required 300-day window, and Shirley's Title VII claim is timely.

Turning to Shirley's § 1981 allegations, his claims could be subject to either a four-year or two-year limitations period. A claim involving the making of contracts is subject to the analogous state personal rights statute of limitations while a claim that arises out of post-contract formation conduct is subject to a four-year statute of limitations. *Dandy v. United Parcel Service, Inc.*, 388 F. 3d 263, 269 n. 4 (7th Cir. 2004). In Illinois, the state personal rights statute of

limitations is two years. 735 ILCS 5/13-202. Whether the two-year or four-year statute of limitations applies turns on whether Shirley had a contract with Staffing Network when he signed in at the branch offices, making the discrimination post-contract formation conduct subject to the four-year window, or whether his claim should be considered a "failure to hire" allegation, subject to the two-year window.

At this stage in the litigation, "[t]he record is insufficient . . . to enable the Court to evaluate whether the process of signing up with [the staffing agencies] to be assigned work constitutes a contractual relationship." *Lucas v. Ferrara Candy Co.*, No. 13 C 1525, 2014 WL 3611130, at *7 (N.D. Ill. July 22, 2014). Because Staffing Network's affirmative defense would only be granted on a motion to dismiss if Shirley's complaint set out all the facts necessary to prove it, and Shirley's complaint does not provide sufficient evidence about the nature of his relationship with Staffing Network, the affirmative defense fails at this stage in the litigation. Regardless of whether the final date of discrimination was June 2014, as is alleged in Shirley's complaint, or June 2013, as Staffing Network argues is the operative date, Shirley's § 1981 claim is considered timely at this stage of the litigation. Under either of these dates, the claim was filed within four years of the final alleged date of discrimination.

## II. Factual Sufficiency of the Complaint

### A. Disparate Treatment (Counts I and II)

In order to state a prima facie claim for intentional discrimination under Title VII, a plaintiff need only aver that the employer instituted an adverse employment action against the plaintiff on the basis of his race. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (applying this standard in the context of gender); *see also Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (applying *Luevano* in the context of race). Plaintiff's

§ 1981 claim is subject to the same liability standard. *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) ("In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983.")

Providing notice of a claim is particularly straightforward in an employment discrimination suit as employers are "familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

Shirley has met his burden and provided fair notice of a plausible claim to relief. He has alleged that he observed Staffing Network referring non-African American job applicants before referring African American applicants with similar qualifications. This is an allegation of an adverse employment action on the basis of race. Given this allegation, Staffing Network can begin investigating into the basis for Shirley's claim and preparing a defense. If his allegations are true, it is plausible that Shirley will have a right to relief under the law. Nothing more is required to survive a motion to dismiss.

Later in the litigation more will be required to prove Shirley's claim, and Staffing Network is correct that Shirley's complaint does not provide that details that will ultimately be necessary to prove his claim. He has not provided the specific dates he sought work nor has he named specific client companies for which he was qualified to work. In fact, Shirley's complaint is more factually sparse than the *Lucas* cases he cites, as the plaintiffs in those cases alleged they were seeking work with a particular company and were denied. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870 (N.D. Ill. 2014); *Lucas v. Ferrara Candy Co.*, No. 13 C 1525, 2014 WL 3611130 (N.D. Ill. July 22, 2014). But Shirley has provided the court with the range of time during which he applied for jobs and one job that he worked at and considered himself qualified for further

6

assignments. While Shirley may not have taken careful notes regarding the dates and times he visited the Staffing Network office, it was reasonable for him not to. He did not know at the time of those visits that discrimination and litigation would follow.

Shirley has provided Staffing Network with sufficient detail to allow the company to begin mounting a defense. These details also make it plausible that Shirley has a claim for intentional discrimination. The Defendant's Motion to Dismiss Counts I and II is denied.

**B. Disparate Impact (Count III)**

A disparate impact claim exists where "a specified employment practice, although neutral on its face, has a disproportionately negative effect on members of a legally protected class." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996). A practice need not be facially neutral to give rise to a disparate impact claim as "any employment policy, not just a facially neutral policy" can give rise to a claim. *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014).

Here Shirley has alleged that Staffing Network has a "policy and practice of hiring Hispanic laborers over African American laborers" and this policy and practice has an adverse impact on a protected class, African Americans laborers. The only evidence offered in support of this allegation is Shirley's own observations while at the Hanover Park branch office. When the plaintiffs in the *Lucas* cases alleged a discriminatory policy of preferring Hispanic laborers to African Americans in job referrals and supported those allegations with their own observations, the plaintiffs' claims survived a motion to dismiss. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d at 879 ("[T]he plaintiffs identified a specific employment policy—preferring Latino workers to African American workers—that disparately impacts African American workers."); *Lucas v. Ferrara Candy Co.*, 2014 WL 3611130, at *4 ("While Plaintiffs have not pleaded exact figures

7

that indicate disparate impact, they nevertheless have used an appropriate statistical method–surveying–to generate basic facts that indicate a disparity that Defendants' policies plausibly created.").

Similar to the *Lucas* cases, Shirley has identified a specific employment policy and practice and provided the basic facts that suggest this policy and practice had an adverse impact on African Americans. This is sufficient to state a claim for adverse impact under Title VII. For these reasons, Staffing Network's motion to dismiss Shirley's disparate impact claims (Count III) is denied.

### III. Motion to Strike Class Allegations

Shirley asks the court to permit all three counts to proceed as a class action pursuant to Fed. R. Civ. P. 23. Staffing Network has moved to strike these class allegations from the complaint, arguing that the class allegations are vague, conclusory, and not appropriate for class-wide relief.

Under Rule 23(c)(1)(A), a court may "deny class certification even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). This is appropriate when it is evident from the face of the complaint that certification would be improper as a matter of law. *Payton v. County of Carroll*, 473 F.3d 845, 854 (7th Cir. 2007). But when additional discovery might be useful in resolving the class determination, the court may wait for a more practicable time before entertaining the subject of class certification and making a proper ruling. *Kasalo*, 656 F.3d at 563. Determining whether the Rule 23 requirements have been satisfied requires a "rigorous analysis," and a court need not conduct an analysis before sufficient information has been presented. *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011)

Staffing Network challenges whether Shirley's class action allegations can satisfy the commonality requirement set out in Rule 23(a)(2) and the predominance requirement in Rule 23(b)(3). A proposed class satisfies commonality where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The class must raise a "common contention" that "is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A common question is one that can determine the truth of all the plaintiffs' claims "in one stroke." *Id*. A proposed class will satisfy the Rule 23(b)(3) predominance requirement where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

Plaintiff has alleged that Staffing Network engaged in a pattern and practice of referring non-African American workers to jobs when African Americans were equally qualified for a referral. There is nothing facially flawed about such an allegation that would make class certification improper as a matter of law. As more details about Staffing Network's policies and practices are uncovered at a later stage of litigation, Staffing Network may be able to raise arguments about how the company had no such policy or practice commonly applied to all applicants or about how the unique details of each job referral predominate over the common questions from the class. But additional information is needed to make a final judgment about these issues. Dismissal of the class allegations is therefore inappropriate at this early stage, and Defendant's motion to strike is denied.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Class Action Complaint is denied, and Defendant's Motion to Dismiss Class Allegations is denied.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 8, 2016